# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

JOHNATHAN MANNING,  )
                Plaintiff,  )
v.  )   No. CIV 18-373-RAW-SPS
JIM FARRIS, et al.,  )
                Defendants.  )

## OPINION AND ORDER

This matter is before the Court on Defendant' motion to dismiss. Plaintiff is a pro se prisoner in the custody of the Oklahoma Department of Corrections who is incarcerated at Northeast Oklahoma Correctional Center in Vinita, Oklahoma. He brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at Jess Dunn Correctional Center (JDCC) in Taft, Oklahoma. The defendants are Jim Farris, JDCC Warden; Linzi Custer, JDCC Unit Manager; and Romon Jones, JDCC Chief of Security. The Court has before it for consideration Plaintiff's complaint (Dkt. 1), a special report prepared at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 20), and Defendants' motion to dismiss (Dkt. 21). Plaintiff has not filed a response to Defendants' motion.

Plaintiff alleges that on July 25, 2018, he and Inmate Justin Smith had just finished making their last lap on the walking track, when Sgt. Moran asked what they were doing. Plaintiff and Inmate Smith said they were returning to their unit. Sgt. Moran pat-searched them and told them to walk. When they reached their unit, Sgt. Moran directed them to the lieutenant's office. Sgt. Moran and Lt. Baltus pulled Plaintiff and Smith into the office and began asking Smith why he was on the fence. Smith told them that no one was on the fence. Lt. Baltus tried to coerce Smith into saying Plaintiff was on the fence, but Smith did not

comply. Sgt. Moran allegedly lied by saying he saw one of the inmates on the fence, but he did not know which one. Lt. Baltus and Sgt. Moran then said they were going to charge both of them with attempted escape.

After Smith left the office, Plaintiff was questioned by Lt. Baltus and Sgt. Moran. The officers attempted to coerce him into saying he was "getting a drop." Plaintiff denied the accusation and said neither he nor Smith were on the fence. Plaintiff again was told that he and Smith would be charged with attempted escape.

Plaintiff and Smith were taken to the SHU and placed in a shower for approximately an hour. They next were moved to a room with no bed, toilet, sink, or running water. A mat was on the concrete floor. They had to urinate in their drinking cups or under the door, unless they were allowed to use the bathroom. They also had to wait for days to use a toilet to defecate. Because there was no toilet paper, they had to use an orderly's toilet paper. Plaintiff and Smith were told their room stank and smelled like a kennel, but they were not allowed to clean it. They could not get clean drinking cups and had to use the shower to rinse cups that had been used for urination. They were in the room for more than a week.

When Plaintiff and Smith saw the disciplinary officer, they were told that each was being charged with two Class A offenses, they would be returned to the yard, and their levels would not be dropped. Plaintiff was at Level 4, and Smith was at Level 3. The two offenses would be for refusal of a urinalysis and for being out of bounds of the facility in an unauthorized area. A couple of days later, however, their case manager, Defendant Linzi Custer, told them their levels had been dropped to Level 1, they were being "shipped," and they were "maxed out" on points and sanctions.

Plaintiff and Smith were moved to a cell with blood and feces on the walls and floor, and they were given half a roll of toilet paper for them to share for the next 2½ weeks. They

2

were not allowed to clean the cell.

On August 9, 2018, Plaintiff and Smith began exhausting their remedies. After this process began, however, they allegedly were denied the required paperwork to continue the exhaustion process. They also were denied the first names of staff. On August 14, 2018, another guard, C/O Cole said, "Fuck you ya'll ain't got shit comeing [sic] from me," when Plaintiff and Smith asked for the Request to Staff (RTS) they needed to continue the exhaustion of their remedies. They also claim they wrote an RTS to the law library, but did not receive a response.

Also on August 14, 2018, Plaintiff was pulled out of his cell and taken to an office where his case manager, Defendant Custer, and Lt. Richardson spoke with him about the RTS. Defendant Custer told Plaintiff to tell Smith that she was doing what she was told to do, and they should not have been in an unauthorized area. Plaintiff said he and Smith needed their answered RTSs.

On that same day, the Chief of Security came to the SHU and went cell to cell. When he got to Plaintiff and Smith's cell, they asked him for his first name for legal reasons. He laughed at them and walked off.

On August 16, 2018, Defendant Custer allegedly told Plaintiff she had lost his packet for a transfer to another minimum security facility, and she made him sign one for a medium security facility. Plaintiff claims Custer did this in retaliation and to harass him, because a couple of days earlier, he told her he was filing a lawsuit. Plaintiff further asserts Custer has been lying to him and Smith "since day one of all this."

On August 22, 2018, Lt. Clay, an intelligence officer, asked Plaintiff and Smith why they were filing so much paperwork and a lawsuit. Lt. Richardson also was present. Plaintiff told them everything that had happened, and both officers said he was in the right and his

3

federal rights had been violated.

On August 24, 2018, Plaintiff was transferred to another facility. He asserts he has exhausted all the remedies, however, the exhaustion stopped with the RTS.

**Standard of Review**

The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555-56. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed. *Id*. at 558. The Court applies the same standard of review for dismissals under 28 U.S.C. § 1915(e)(2)(B)(ii) that is employed for Fed. R. Civ. P. 12(b)(6) motions to dismiss for failure to state a claim. *Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007).

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given to the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which

4

the plaintiff could prevail, it should do so . . . ." *Id*. A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555. The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). With these standards in mind, the court turns to the merits of Defendants' motion.

**Exhaustion of Administrative Remedies**

Defendants allege Plaintiff has failed to exhaust the administrative remedies for any of his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the Court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. If that is unsuccessful, he may submit a an RTS within seven days of the incident, alleging only one issue per form. If the offender does not receive a response to his

RTS within 30 calendar days of submission, he may submit a grievance to the Review Authority (warden's office), asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority (ARA) or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken (Dkt. 20-4 at 8-16).

**Discussion**

The record shows that on August 13, 2018, the JDCC law library received Plaintiff's RTS to his unit manager, which alleged Plaintiff repeatedly had been denied toilet paper and permission to clean his cell of the blood and feces on the wall (Dkt. 20-5 at 2-3). The response, dated August 16, 2018, advised that cells were cleaned daily, and Plaintiff "must not refuse services." *Id.* at 2.

On August 13, 2018, the law library received an RTS from Plaintiff to Defendant Jim Farris, complaining that his classification level had been dropped, and he was being shipped because of a misconduct for refusal of a urinalysis and for being out of bounds of the facility (Dkt. 20-6 at 2-3). He also complained about being placed in segregation with no toilet, sink, or water. *Id*. at 3. The RTS was returned on August 31, 2018, for Plaintiff's failure to follow OP-90124. *Id*. at 2. Because the incidents resulting in Plaintiff's change in classification level occurred on July 25, 2018, his RTS was out of time.

On August 21, 2018, the law library received an RTS from Plaintiff to Defendant Custer, asking why he was being retaliated against and forced to sign a medium security packed only two days after Plaintiff told Custer about filing paperwork and a lawsuit against her (Dkt. 20-7 at 2). He claimed that only a week earlier, he had signed a transfer packet for minimum security. *Id*. at 3. The response to this RTS, dated August 23, 2018, stated that on

6

August 8, 2018, it was recommended that Plaintiff be transferred to a medium security facility for a more structured environment, because he had been caught while he was within ten feet of the security fence after the yard was closed. *Id*. at 2, 4.

On October 12, 2018, Plaintiff filed a grievance regarding his alleged mistreatment on July 25, 2018 (Dkt. 20-8 at 2-3). The grievance was returned unanswered by a memorandum dated October 23, 2018, because the original RTS was filed out of time (Dkt. 20-8 at 4).

On November 7, 2018, Plaintiff submitted an appeal to the ARA, appealing the response from Defendant Farris dated October 23, 2018 (Dkt. 20-9 at 2). The appeal was returned unanswered on November 15, 2018, because a non-response cannot be appealed. *Id*. at 3.

Plaintiff submitted another RTS on November 29, 2018, concerning his treatment as he waited to be transferred to another facility (Dkt. 20-10 at 2-3). The response, which was sent to Plaintiff on December 5, 2018, stated that Plaintiff's transfer was pending, and his allegations would be looked into. *Id*. at 2. On December 5, 2018, Plaintiff submitted a grievance related to this RTS. *Id*. at 4-5. The grievance was returned unanswered because: (1) it was submitted on behalf of another person; (2) it presented more than one issue; and (3) the RTS and grievance were not specific as to dates, places, personnel involved, and how Plaintiff was affected. *Id*. at 6. Each of these errors violated DOC policy regarding RTSs and Grievances. *Id*. Plaintiff was given ten days to correct his Grievance. *Id*.

Plaintiff next filed an appeal to the ARA on December 21, 2018, complaining that his "grievances and everything" are being returned unanswered. *Id*. at 7. The appeal was denied on January 4, 2019, because Plaintiff had failed to follow the instructions provided in the response to his related grievance, and because he had submitted on behalf of another person.

*Id*. at 8.  Plaintiff was informed that he was out of time to properly file his grievance. *Id.*

After careful review of the record, the Court finds Plaintiff has failed to exhaust the administrative remedies for his claims, as required by 42 U.S.C. § 1997e(a).

**ACCORDINGLY,** Defendants' motion to dismiss (Dkt. 21) is GRANTED, and this action is DISMISSED in its entirety.

**IT IS SO ORDERED** this 31st day of March, 2020.

Ronald A. White
United States District Judge
Eastern District of Oklahoma